# In the United States Court of Federal Claims

### No. 17-1228C
### (Bid Protest)
### (Filed: February 9, 2018)[1]

```
* * * * * * * * * * * * * * * * * * * * * * * * * * * * *
                                              *
WALDEN SECURITY,                              *
                                              *
                 Plaintiff,                   *
                                              *
        v.                                    *
                                              *
THE UNITED STATES,                            *
                                              *
                 Defendant,                   *
                                              *
        and                                   *
                                              *
PARAGON SYSTEMS, INC.,                        *
                                              *
                 Intervenor.                  *
                                              *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * *
```

**Post-Award Bid Protest; Supplementation of Administrative Record; Past Performance Evaluation; Too Close-at-Hand Information; Technical Evaluation; Injunctive Relief.**

Jonathan D. Shaffer, Mary Pat Buckenmeyer, and Sean K. Griffin, Smith Pachter McWhorter PLC, 800 Towers Crescent Drive, Suite 900, Tysons Corner, VA 22182, for Plaintiff.

Chad A. Readler, Robert E. Kirschman, Jr., Douglas K. Mickle, and A. Bondurant Eley, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, P.O. Box 480, Ben Franklin Station, Washington, D.C. 20044, for Defendant.

Katherine S. Nucci and Scott F. Lane, Thompson Coburn LLP, 1909 K Street NW, Suite 600, Washington, D.C. 20006, for Intervenor.

---

[1]     The Court denied this protest orally on November 9, 2017.  This opinion memorializes the Court's oral ruling.

The Court issued this opinion under seal on November 29, 2017, and directed the parties to file any proposed redactions by December 13, 2017.  Intervenor timely filed its proposed redactions.  In response to the Court's inquiry, Plaintiff and Defendant represented that they had no additional redactions on February 9, 2018.  The Court publishes this Opinion indicating redactions by asterisks "[***]."

---

**OPINION AND ORDER GRANTING DEFENDANT'S CROSS-MOTION
FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

---

**WILLIAMS**, Judge

In this post-award bid protest, Plaintiff Walden Security ("Walden") challenges the award of contracts by the United States Marshals Service ("USMS") to Intervenor Paragon Systems, Inc. ("Paragon") to provide Court Security Officers ("CSOs") to courthouses in the 3rd and 4th Circuits. This matter comes before the Court on the parties' cross-motions for judgment on the Administrative Record ("AR").

Walden contests the USMS's award of the contract to Paragon on four grounds:

1) The USMS failed to properly evaluate Walden's past performance by disregarding "close-at-hand" information pertinent to recent and relevant work;

2) The USMS failed to properly evaluate Paragon's past performance by determining that Paragon's past performance was essentially equal to Walden's;

3) The USMS evaluated technical factors in an unreasonable, disparate, and unfair manner by placing undue weight on the purported technical strengths of Paragon's proposal; and

4) The USMS failed to perform a proper tradeoff analysis and best value determination, and treated different offerors in a disparate manner by failing to consider meaningful discriminators contrary to the Competition in Contracting Act and the Federal Acquisition Regulation ("FAR").

Walden asks the Court to direct the USMS to award the contracts to Walden or, in the alternative, to re-evaluate Walden's and Paragon's past performance and technical proposals and to make a new best value determination.

Because the agency's decision was reasonable, documented, and in accordance with the Request for Proposals ("RFP") and applicable procurement law, Walden's protest is **DENIED**.

### Findings of Fact[2]

**The Solicitation**

On April 22, 2016, the United States Marshals Service Office of Security Contracts issued RFP number DJM-16-A32-R-0001 for non-commercial armed security guard court services for

---

[2]     These findings of fact are derived from the Administrative Record ("AR"). Additional findings of fact are in the Discussion. The Court does not correct grammatical or typographical errors in quotations from the record.

the 3rd, 4th, and 12th[3] Judicial Circuits.  AR 301-02.  The USMS is responsible for managing and developing a nationwide program to provide for the physical security of the federal judiciary.  AR 309.  To accomplish its mission of courthouse security, the USMS contracts with private security contractors, whose employees are deputized as Special Deputy U.S. Marshals while serving as CSOs.  AR 309.

The Solicitation was amended four times—on May 9, May 12, May 13, and finally on May 16, 2016.  AR 1127, 1294, 1318, 1342.  The procurement was conducted under FAR Part 15 for an indefinite delivery, indefinite quantity ("IDIQ") time and materials/labor hour contract, with a one-year base period and four one-year option periods.  AR 302.  The award was to be made on the basis of best value to the Government.  AR 471-72.  Under the solicitation, an offeror's technical capability and past performance would be considered "to be approximately equal to each other and when combined to be significantly more important than price."  AR 471.

The best value determination was to be made as follows:

1) For each Circuit, the total evaluated price will be the determining factor for award among proposals that are considered substantially equal with regards to non-price factors.  That is, where the USMS determines that the non-price factors of each offeror are not significantly different among competing proposals, then the proposal with the lowest evaluated price will be selected for award.

2) If the USMS determines that there are significant non-price factor differences among competitive proposals for each Circuit, then a more expensive proposal may be selected for award where the USMS determines that the value of the selected proposal is worth the price differential.

AR 472.

Offerors were instructed to submit a technical proposal and financial information covering all circuits proposed and a business proposal for each individual circuit proposed.  AR 453.  As part of the business proposal, offerors were able to provide information on past and current contracts and on any problems and corrective action taken on these contracts.  AR 459.  For the technical proposal, offerors were required to address three evaluation factors of equal value: (1) Recruitment Program and Vetting Applicants, (2) Training and Qualifications Program, and (3) Quality Assurance/Quality Control Plans.  AR 455-57.  These factors were to be evaluated using the Adjectival Color Rating Scheme, set forth below:

| Adjective | Color | Definition |
|---|---|---|
| Exceptional | Blue | Satisfies all Government requirements with extensive detail to indicate a thorough understanding of the technical factor and how it relates to successful performance of the contract, and offers numerous significant strengths, which are not offset by |

---

[3]      In the USMS' nomenclature, the 12th Circuit refers to the federal courts in the District of Columbia.  AR 302.

| | | weaknesses, with an overall low degree of risk in meeting the Government's requirements. |
|---|---|---|
| Very Good | Green | Satisfies all Government requirements with ample detail to indicate a good understanding of the technical factor and how it relates to successful performance of the contract, and offers some significant strengths, which are not offset by weaknesses, with a low degree of risk in meeting the Government's requirements. |
| Satisfactory | Yellow | Satisfies all Government requirements with sufficient detail to indicate a reasonable understanding of the technical factor and how it relates to successful performance of the contract, with a moderate degree of risk in meeting the Government's requirements. |
| Marginal | Orange | Satisfies some Government requirements with little detail to indicate a minimal understanding of the technical factor and how it relates to successful performance of the contract, with an overall high degree of risk in meeting the Government's requirements. |
| Unsatisfactory | Red | Proposal contains a major error, omission, or deficiency that indicates a lack of understanding of the technical factor and cannot be cured without materially altering the technical elements of the proposal. |

AR 473.

The technical factors were to be evaluated under the following criteria:

***Factor 1: Recruitment Program and Vetting Applicants***

The Government requires a timely multi-faceted and systematic recruitment program that independently verifies and filters potential applicants and provides qualified CSOs capable of meeting the CSO/LCSO Qualifications Standards required under SOW C.4.1 [providing the minimum qualifications for a CSO].

At a minimum, the offeror shall acknowledge all qualification and vetting requirements and provide a separate written draft Standard Operating Procedures that describe specific processes used to independently verify all minimum qualifications, and demonstrate how the offeror intends to provide comprehensive oversight and quality control through recruiting, vetting, selecting and submitting the best qualified applicants from a pool of candidates. (See Section L.5.2.1, Factor 1)

***Factor 2: Training and Qualifications***

The Government requires an effective and efficient high quality continuous training program for CSOs/LCSOs performing under this contract.

The SOW requires various types of training, lesson plans, certified instructors and weapons qualification instructors, various delivery methods including an established LMS capable of immediately supporting an approved training plan, advanced planning, various documentation and record maintenance. All types require a preapproved annual training plan.

At a minimum, the offeror shall acknowledge all training administration, training and qualification requirements identified in the SOW, and provide a separate written draft Training Plan, draft sample Lesson Plan, training instructors' and weapons qualification instructors' narrative and LMS system information. (See Section L.5.2.1, Factor 2)

***Factor 3: Quality Assurance/Quality Control Plan (QCP)***

The Government requires the Contractor to have two efficient and effective Quality Assurance Programs to include two Quality Control Plans (QCPs) as required under SOW C.25 [outlining quality assurance requirements]. The first program/plan is a CSO QCP; the second is a Corporate QCP.

At a minimum, the offeror shall discuss how their CSO QCP, Corporate QCP, and inspection procedures will ensure products, services, and contract administration in compliance with the terms of the SOW. The draft QCPs shall demonstrate an understanding of all the Government's requirements set forth in this solicitation. The representation of corporate structure and should identify key personnel and their responsibilities related to contract management and oversight. (See Section L.5.2.1, Factor 3)

AR 473-74.

The Government was to evaluate past performance under FAR 15.305(a)(2) on a similar adjectival scale, looking to "(1) the evaluation references contacted by the offeror and (2) data independently obtained from other government and commercial sources." AR 475. Past performance was deemed relevant if it was similar in scope, magnitude, and complexity to the requirements of the RFP. AR 475. Past performance was to be evaluated on the following scale:

| Adjective | Color | Definition |
|---|---|---|
| Exceptional | Blue | The Government has a high expectation that the offeror will successfully perform the required effort. |
| Very Good | Green | The Government has an above average expectation that the offeror will successfully perform the required effort. |

| Satisfactory | Yellow | The Government has a reasonable expectation that the offeror will successfully perform the required effort. |
| Marginal | Orange | The Government has a below average expectation that the offeror will successfully perform the required effort. |
| Unsatisfactory | Red | The Government has a low expectation that the offeror will successfully perform the required effort. |
| Neutral | Gray | No recent/relevant performance record is available or the offeror's performance record is so sparse that no meaningful assessment rating can be reasonable assigned. |

AR 475.

With respect to the evaluation of past performance, the RFP provided in relevant part:

Past performance will be evaluated in accordance with FAR Subpart 15.305(a)(2) Past Performance Evaluation. Past performance information is one indicator of an offeror's ability to perform the contract successfully. The currency and relevance of the information, source of the information, context of the data, and general trends in contractor's performance will be considered. The evaluation may consider information provided by the program office, the contracting office, and end users. The Government will use past performance information registered in the Past Performance Information Retrieval System (PPIRS) and the Federal Awardee Performance and Integrity Information System (FAPIIS). Additionally, the Government reserves the right to utilize all information available at the time of evaluation, e.g., Government audits, information made available through reference checks, and information available through commercial sources.

The offeror may provide information on past or current contracts (Federal, State, and local government and commercial) for efforts similar to the Government requirement performed during the last three years (maximum) in accordance with FAR Subpart 42.1503(g).

\*       \*       \*

The offeror may provide information on problems encountered on the identified contracts and the offeror's corrective actions.

\*       \*       \*

Offerors will be given an opportunity to address adverse past performance information to which the offeror has not previously had an opportunity to respond.

The burden of providing thorough and complete past performance information remains with the offeror . . . . Should the Offeror not have three (3) relevant

contracts that are of similar size and scope to the requirements of this solicitation, the Contractor shall provide additional relevant references.

The Government does not assume the duty to search for data that cures the problems found in the information provided by the offeror.  The burden of providing thorough and complete past performance information remains with the offeror.

AR 458-59.

Proposals were due on May 23, 2016.  AR 463.

**Proposals, Evaluation of Proposals, and Initial Award**

Ten companies submitted proposals and received the following ratings:

| Past Performance | RATING |
|---|---|
| Akal Security, Inc. | Very Good [Green] |
| Alutiiq Diversified Services, LLC | Satisfactory [Yellow] |
| American Eagle Protective Services Corp. (AEPS) | Satisfactory [Yellow] |
| American Security Programs, Inc. | Very Good [Green] |
| Centerra Group, LLC | Very Good [Green] |
| Inter-Con Security Systems, Inc. | Very Good [Green] |
| Paragon Systems, Inc. | Very Good [Green] |
| Project Support Services, Inc. | Neutral [Gray] |
| Walden Security | Very Good [Green] |
| The Whitestone Group | Marginal [Orange] |

AR 3090.

| Offeror | Factor 1 | Factor 2 | Factor 3 | Consensus |
|---|---|---|---|---|
| AEPS | Yellow | Yellow | Yellow | Yellow |
| Akal Security | Yellow | Green | Green | Green |
| Alutiiq | Green | Yellow | Yellow | Yellow |
| American Security Programs | Green | Yellow | Green | Green |
| Centerra | Green | Green | Green | Green |
| Inter-Con Security | Green | Green | Green | Green |
| Paragon Systems | Blue | Green | Green | Green |
| PSS | Yellow | Green | Green | Green |
| Walden Security | Green | Green | Green | Green |
| The Whitestone Group | Yellow | Yellow | Yellow | Yellow |

AR 2476 ("Final Report of the Technical Evaluation Board").

7

Walden's past performance was awarded a rating of Green – Very Good.  AR 3113.  The Past Performance Report prepared by the USMS stated:

> Walden's contract files evidence a historical narrative of program improvement, full compliance with all contract requirements, and full compliance with terms and conditions. Walden's CSO Program contract transition for the 1st, 5th and 8th Circuits was fully compliant.   However, since the acquisition of these three additional circuits the USMS program offices have observed some difficulty from Walden in some areas of program administration, most especially in processing applicant packages and medical qualification information on deadline.

AR 3114.[4]  In addition to its CSO contracts, Walden provided a contract with the Center for Disease Control and Prevention ("CDC") and a non-federal contract with the state of Tennessee as past performance references.  AR 3113-14.  The CO for the CDC contract rated Walden as "exceptional" in all categories.  AR 3114.  Walden was also rated "exceptional" across the board for its Tennessee contract.  Id.  The source for the Tennessee contract described Walden as "surpass[ing] my expectations as well as the expectations of leadership . . . they are highly capable of managing their contracts."  AR 3114-15.

Paragon's past performance was also evaluated as Green – Very Good.  AR 3110.  Paragon provided CSO experience as part of a joint venture with American Eagle Protective Services called American Paragon Protective Services.  AR 3111.  Paragon additionally provided as references a contract with the Department of Homeland Security and one with the Department of Health and Human Services.  With regard to the CSO contract, Paragon had "no notable performance issues for FY2015-Present."  Id.  This was a performance improvement trend from FY2013-2014.  Id.

After reviewing the proposals submitted by the ten contractors, the USMS narrowed the field to the three top proposals, submitted by Walden, Paragon, and Akal Security.  These three offerors obtained the highest adjectival scores for technical and past performance while offering slightly differing prices.[5]  The proposed prices were as follows:

| Circuit 3 - Offerors | Total Proposed Price | Differential – Dollar Amount | Differential – Percentage From Lower Priced Offer | Price Position |
|---|---|---|---|---|
| Walden Security | $138,834,184.50 | | | Lowest |
| Akal Security | $138,976,998.08 | $142,813.58 | 0.10% | 2nd Lowest |
| Paragon Systems | $139,025,117.82 | $190,933.32 | 0.14% | 3rd Lowest |

---

[4]   For fiscal years 2013 and 2014, Walden held a CSO contract for the 4th Circuit. In fiscal year 2015, Walden added an additional contract for the 6th Circuit. Starting in fiscal year 2016, Walden added three additional Circuits, the 1st, 5th, and 8th.  AR 3113-14.

[5]   Other offerors also received an overall rating of "Good" for technical and an overall rating of "Very Good" for past performance but were not considered due to price.

| Circuit 4 - Offerors | Total Proposed Price | Differential – Dollar Amount | Differential – Percentage From Lower Priced Offer | Price Position |
|---|---|---|---|---|
| Akal Security | $206,451,574.41 | | | Lowest |
| Walden Security | $207,717,865.30 | $1,266,290.89 | 0.61% | 2nd Lowest |
| Paragon Systems | $207,775,949.06 | $1,324,374.65 | 0.64% | 3rd Lowest |

AR 3128.  Walden proposed the lowest price for the 3rd Circuit, and the second lowest price for the 4th Circuit.  Paragon's proposed price was 0.14% higher for the 3rd Circuit and 0.03% higher for the 4th Circuit.

Based on all of the criteria in the RFP, Walden, Paragon, and Akal were ranked as follows:

**3rd Circuit Ranking**

| Ranking | Offerors | Overall Technical | Overall Past Performance | Total |
|---|---|---|---|---|
| 1 | Paragon Systems | GOOD [Green] | VERY GOOD [Green] | $139,025,117.82 |
| 2 | Walden Security | GOOD [Green] | VERY GOOD [Green] | $138,834,184.50 |
| 3 | Akal Security | GOOD [Green] | VERY GOOD [Green] | $138,976,998.08 |

**4th Circuit Ranking**

| Ranking | Offerors | Overall Technical | Overall Past Performance | Total |
|---|---|---|---|---|
| 1 | Paragon Systems | GOOD | VERY GOOD [Green] | $207,775,949.06 |
| 2 | Akal Security | GOOD | VERY GOOD [Green] | $206,451,574.41 |
| 3 | Walden Security | GOOD | VERY GOOD [Green] | $207,717,865.30 |

AR 3129.

On July 13, 2016, the USMS awarded the contracts for the 3rd, 4th, and 12th Circuits to Paragon.  AR 3232.  In the source selection decision, the agency identified Paragon's proposal as generating the best value to the Government based on the "the Technical Evaluation Board (TEB) reports, past performance, and price analysis documents, and Negotiated Memorandum dated June 29, 2016."  AR 3232.  The Negotiated Memorandum rated Paragon and Walden's non-price proposals as follows:

| | **Factor:1** Recruitment Program and Vetting Applicants | **Factor:2** Training and Qualifications Program | **Factor: 3** Quality Assurance/Quality Control Plan (QCP) | **Consensus** |
|---|---|---|---|---|
| Paragon Systems | Excellent [Blue] | Good [Green] | Good [Green] | Good [Green] |
| Walden Security | Good [Green] | Good [Green] | Good [Green] | Good [Green] |

AR 3136.

The agency rated Paragon as "Excellent" under Technical Factor 1 on the strength of its proposal to "[***]." AR 3232. These advantages would allow Paragon the greatest chance of "select[ing] and develop[ing] those candidates that will succeed in the CSO positions." Id. For the 3rd Circuit, Paragon's proposed price of $139,025,117.82 was about .14% higher than Walden's. In the view of the USMS, the "superiority of Paragon's technical proposal over that of Walden's justifie[d] selecting Paragon Security for this extremely small price premium." AR 3145. For the 4th Circuit, "[b]ecause Paragon has numerous strengths in Factor 1 of the technical evaluation, the strengths [were] substantial and enough to offset the justification of paying .61% more than Walden." AR 3146. The CO concluded:

> [T]he following award recommendations represent the best value to the Government overall, considering technical, price, financial responsibility and whose offerors are otherwise responsible and eligible for award:
>
> Based on the technical evaluation factors and price, Paragon is recommended for an award for the 3rd, 4th and 12th circuits. Paragon is rated technically as good, with a very good past performance rating, reasonably priced, and financially capable to receive the award in these circuits.

AR 3150. On July 28, 2016, Walden was notified that its bid had been unsuccessful. AR 3236.

### First GAO Protest, Corrective Action, and Second Award

On August 8, 2016, Walden and an additional disappointed bidder, Akal Security, separately protested the July 28, 2016 award to Paragon at the Government Accountability Office ("GAO"). AR 3265. Walden argued that "the agency (1) failed to properly evaluate proposals under Technical Factors 1, 2 and 3; (2) failed to properly evaluate proposals under the Past Performance Factor; and (3) failed to properly conduct its tradeoff and best value determinations." AR 3265.

On September 23, 2016, the USMS advised GAO that it would take corrective action in light of Walden's and Akal's protests: that it intended to reevaluate the technical proposals and past performance of Walden, Akal, and Paragon, and make a new source selection decision. AR 4202. On September 27, 2016, GAO dismissed the protest as academic. AR 4204. Consistent with the representations it made to GAO regarding corrective action, the USMS reevaluated the proposals and conducted a comparative analysis of Akal, Paragon, and Walden's technical proposals and past performance. AR 4250.

Based on this reevaluation, the TEB rated the offerors' technical proposals as follows:

| Offeror | Factor 1 | Factor 2 | Factor 3 | Consensus |
|---|---|---|---|---|
| Akal Security | Satisfactory [Yellow] | Good [Green] | Good [Green] | Good [Green] |
| Paragon Systems | Excellent [Blue] | Good [Green] | Good [Green] | Good [Green] |

| Walden Security | Good [Green] | Good [Green] | Good [Green] | Good [Green] |
|---|---|---|---|---|

AR 4252.  The TEB provided a detailed comparative analysis of Paragon's and Walden's technical proposals, identified several advantages of Paragon's proposal under Factor 1, and determined that Paragon's proposal under Factor 1 was "substantially technically superior to Walden's proposal." AR 4255-56.  The TEB found Paragon and Walden's proposals to be substantially equal under Factors 2 and 3.  AR 4256-57.

The agency also reevaluated the offerors' past performance.  In its initial protest, Walden alleged that the agency had unreasonably ignored Paragon's performance of a relevant contract with the Social Security Administration.  Upon reviewing all reference contracts provided by Paragon and Walden, the CO determined that Walden and Paragon's past performance ratings were "substantially equal."  AR 4246-47.

In light of these reevaluations, the Source Selection Authority ("SSA") determined that Paragon's proposal was the best value for the Government, stating "I am convinced that the unmatched benefits in the Paragon proposal are significant since they relate to the quality of the CSOs assigned to protect the federal judiciary."  AR 4311.  The USMS informed Paragon on November 28, 2016, that it had once again been awarded the contracts for the 3rd, 4th, and 12th Circuits.  AR 4312.

## Second GAO Protest, Corrective Action, and Third Award

Walden and Akal again protested to GAO on December 12, 2016.  Akal's protest was denied.  AR 4879.  GAO sustained Walden's protest on the ground that, contrary to the terms of the solicitation, the USMS had failed to give Walden the opportunity to respond to certain adverse past performance information.  AR 4902.

In sustaining this ground of Walden's protest, GAO reasoned:

In sum, we find that the solicitation required that offerors be given the opportunity to address adverse past performance information to which they had not previously had an opportunity to respond, and that the agency relied on adverse past performance information to which Walden had not been given the opportunity to respond in its evaluation.  Given that according to the agency, consideration of this information prevented it from forming a high expectation that Walden would successfully perform the required effort, we further find that there is a reasonable possibility that Walden suffered competitive prejudice as a result of the agency's failure to give it the opportunity to respond.  (We note in this connection that a high expectation of successful performance would have resulted in a past performance rating of exceptional, which exceeds Paragon's past performance rating of very good).  As a result, we sustain Walden's protest on this issue.

\*       \*       \*

In sum, we sustain Walden's protest challenge to the agency's awards to Paragon for the 3rd and 4th Circuit because we find that the agency failed to provide Walden

the opportunity to address adverse past performance information to which it had not previously had an opportunity to respond. We recommend that the agency give Walden the opportunity to address this adverse information; reevaluate Walden's past performance including its response; and make a new source selection decision.

AR 4888, 4902 (internal citations omitted).

In implementing corrective action, on April 7, 2017, the CO sent a letter to Walden requesting that Walden address its perceived difficulty maintaining contract performance scaling up from FY2015 (when Walden had two circuits) to FY2016 (when Walden assumed three additional circuits, for a total of five). AR 4904. Specifically, the CO identified the "increase in required oversight for Walden's program administration" due to Walden's failure to meet contractual deadlines for submitting completed Applicant Packages and failure in ensuring complete and accurate medical qualification packages as areas requiring additional information. AR 4904-05.

Walden responded on April 17, 2017. AR 4924. Walden contended that, with regard to the late applicant packages, it was being unfairly held responsible for packages that had carried over from the previous contractor or were wrongly included, and for the USMS' delays in forwarding the packages to its central receiving center. AR 4926. Walden also contended that the delay in medical qualification packages was due to a backlog that accumulated during the transition from the prior contractor. AR 4928. Finally, Walden contended that the agency should have considered the results of an April 6, 2017 performance audit, in which Walden received an Applications score of 91% and a Medical score of 85%, the highest scores of any CSO contractor.

In light of GAO's decision and Walden's response, the CO issued a revised Source Selection Recommendation on May 12, 2017, finding that a review of Walden's response to the adverse past performance information "confirmed that Walden did, in fact, have difficulties in contract performance for the areas of processing applicant packages and providing medical qualification information in the aftermath of receiving three additional contracts in FY16." AR 7191. The CO concluded there was "no basis for changing the USMS' previous evaluated past performance rating for Walden of Very Good." Id.

Specifically, the CO found that Walden's response reinforced the USMS's finding that "[s]ince the acquisition of these three additional circuits USMS program offices have observed some difficulty from Walden in areas of program administration" and that while "Walden has successfully performed the required efforts for the last three years . . . this record of performance has demonstrated areas of weakness and risk by trending down in maintaining administrative performance with increased contract loads." AR 7179. To support this conclusion, the CO pointed to Walden's own responses to the initial evaluations:

> While Walden may dispute individual data points in the USMS's source material for analysis, the applicant package performance evaluation originally reported in the USMS past performance analyses and supplemental analysis stands. Walden has not provided any substantial factual refutation of the USMS' original analysis.
>     The USMS's initial past performance evaluation stated,

> Since the acquisition of these three additional circuits USMS program offices have observed some difficulty from Walden in some areas of program administration, most especially in processing applicant packages [and medical qualification information] on deadline.

The USMS supplemental past performance evaluation additionally stated,

> … Walden's performance has demonstrated capacity to successfully perform the required effort without heavy USMS oversight; however, this capacity has shown difficulty in maintaining performance while scaling up services. Walden has required comparatively heavier oversight with five (5) Circuits than they required when they held one (1) to two (2) Circuits. Most of the issue areas are in program administration, most especially in processing applicant packages [and medical qualification information] on deadline.

> … The records show that Walden has successfully performed the required efforts for the last three years, but this record of performance has demonstrated areas of weakness and risk by trending down in maintaining administrative performance with increased contract loads. The above considerations prevent the OSC from forming a high expectation that the offeror will successfully perform the required effort.

Since Walden's response narrative and supporting exhibits have not disproven the analysis of Walden's applicant package performance, it has not disproven the conclusions previously drawn from this analysis.

AR 7178-79.

The CO thus confirmed her finding that Walden's past performance was Very Good and substantially equal to Paragon's and that there was no basis for changing her source selection recommendation in light of Walden's response to the adverse information. AR 7191. The CO noted that Paragon's proposal included "significant and meaningful technical advantages over Walden's proposal" and that "based on trade-off analysis based on substantial technical superiority and very small price differences," detailed in the initial November 4, 2016 Source Selection Recommendation Memorandum, Paragon should again be selected. Id.

 The Source Selection Authority ratified the CO's recommendation in her May 18, 2017 memorandum, stating that the SSA:

> found the memorandum to be persuasive and well-documented.

*     *     *

Since this is a reaffirmation of the USMS's original evaluation of Walden's past performance as Very Good, there appears to be no rational [sic] to change my

13

> previous source selection decision to award the Court Security Officer (CSO) contracts for the 3rd and 4th Judicial Circuits to Paragon Systems . . . . I reaffirm [the November 28, 2016] memorandum in its entirety.

AR 7193.  In that memorandum, the SSA outlined the three criteria that led to Paragon's superior technical score [***], determined that Walden, Paragon, and Akal "all possess the ability to perform the work required under the CSO contract based on their successful past performance," and concurred with the recommendation to award the contract to Paragon based on those two factors and the comparatively negligible difference in price.  AR 4307-11.

On May 19, 2017, the USMS again awarded the contract for the 3rd and 4th Circuits to Paragon; Walden again protested the decision to GAO.

**Third GAO Protest**

Walden returned to GAO for a third time on May 30, 2017.  AR 7225.  Walden contended that the agency failed to adequately consider Walden's responses to adverse past performance information, incorrectly concluded that Paragon had substantially equal past performance, and rendered an unreasonable best-value tradeoff and source selection decision.  Id.

On August 31, 2017, GAO denied Walden's third protest, finding that the USMS had adequately considered Walden's response to adverse past performance information with respect to applicant package lateness and quality assurance.  For the late application packages, GAO found that the contracting officer "either acknowledged the data errors noted by Walden, or accepted (for purposes of her own analysis) the submission dates asserted in Walden's response" and concluded, based on the data Walden provided, that both the number of late applicant packages and the number of late days had increased.  AR 7428.  For the quality assurance issues, GAO found that Walden continued to fail to submit complete medical qualification information, requiring further follow-up by the USMS, and did not "refute the quality assurance issues identified by the agency."  AR 7430.

**The Instant Protest**

On September 11, 2017, Walden filed its complaint in this Court seeking declaratory and injunctive relief, and Paragon intervened.  The USMS agreed to delay the transition, permitting Paragon to begin work on November 22, 2017, and later extended that date until November 30, 2017.  The Court orally denied the protest on November 9, 2017.

### Supplementation of the AR

On September 26, 2017, Walden moved to supplement the Administrative Record with the declaration of five Walden personnel relating to the audit of Walden's performance as the incumbent contractor in several Judicial Circuits, conducted in April 2017, or alternatively to take limited depositions of USMS personnel and obtain document production, in support of its assertion that the Government had informed Walden that its past performance was superior.  The Court denied this motion, finding that the declaration of Walden's personnel which contained the employees' perceptions of the agency's impressions of Walden's work related in the 2017 audit

was unnecessary for effective judicial review since the audit report itself was in the record.  See Tr. 20-21, 71; AR 5333-45.[6]

## Discussion

### Jurisdiction and Standard of Review

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1491(b).  The Court evaluates bid protests under the Administrative Procedure Act's standard of review.  Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005) (citing Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).  This Court will not disturb an agency's procurement decision unless the Court finds that it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A) (2012); Adams & Assocs., Inc. v. United States, 741 F.3d 102, 105-06 (Fed. Cir. 2014).  The Court will set aside an agency's decision as arbitrary and capricious if "the agency 'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'"  Ala. Aircraft Indus., Inc.-Birmingham v. United States, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (alteration in original) (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)).  The Court will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned."  Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 286 (1974).  The Court will not overturn an agency decision "even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations" if the Court finds a reasonable basis for the agency's action.  Honeywell, Inc. v. United States, 870 F.2d 644, 648 (Fed. Cir. 1989) (quoting M. Steinthal & Co. v. Seamans, 455 F.2d 1289, 1301 (D.C. Cir. 1971)).

If this Court finds that the agency acted arbitrarily or capriciously or contrary to law, the plaintiff must also show that it was prejudiced by this conduct to prevail.  Bannum, 404 F.3d at 1351.  This requires the plaintiff to demonstrate that there was a "substantial chance" the plaintiff would have received the contract award but for the Government's errors in the procurement process.  Id. at 1358.  Under Rule 52.1 of the Rules of the Court of Federal Claims, the parties are limited to the AR, and the Court makes findings of fact as if it were conducting a trial on a paper record.  See id. at 1354.  Looking to the AR, the Court must determine whether a party has met its burden of proof based on the evidence in the record.  Id.

### The USMS Properly Evaluated Past Performance

In essence, Walden contends that the agency should have found its past performance to be so far superior to that of Paragon that its past performance should have displaced Paragon's technical superiority and tipped the scales in favor of award to Walden.  Specifically, Walden

---

[6]     On October 19, 2017, the Government advised the Court of several documents that were omitted from the AR due to an error during compilation, and moved to correct the record.  Def.'s Mot. to Amend.  A corrected AR and the Government's corrected briefs were filed on October 26, 2017.

argues that the agency erred in evaluating Walden's past performance because the USMS failed to:

1) use "close-at-hand information" in its second performance audit in April 2017, which Walden contends should have given Walden a higher adjectival rating in past performance;

2) properly evaluate the supplemental past performance information provided by Walden as part of corrective action; and

3) give sufficient weight to Walden's extensive experience and favorable ratings in providing CSOs to various district courts.

There are two aspects to Walden's argument that the USMS erred by failing to consider past performance information contained in the second part of the performance review audit conducted by the USMS between April 3-7, 2017.  AR 5333-45.  Walden contends that the information contained in the audit was too close at hand for the USMS to ignore due to the overlap between the USMS members involved in the audit and those involved in the instant procurement. Walden posits that the positive past performance information contained in part two of the audit would have raised its past performance score from "Very Good" to "Excellent" or at the very least that Walden deserved a higher past performance rating than Paragon's within the "Very Good" range.

The agency has broad discretion in determining which references to review when evaluating past performance.  Seattle Sec. Servs., Inc. v. United States, 45 Fed. Cl. 560, 567 (2000). Indeed, when a Court reviews an evaluation of past performance in a procurement, "the greatest deference possible is given to the agency – what our Court has called a 'triple whammy of deference.'"  Gulf Grp. Inc. v. United States, 61 Fed. Cl. 338, 351 (2004) (quoting Overstreet Elec. Co. v. United States, 59 Fed. Cl. 99, 117 (2003)); see generally Glenn Def. Marine (ASIA), PTE Ltd. v. United States, 720 F.3d 901 (Fed. Cir. 2013) (noting that agencies are afforded "broad discretion" in evaluating past performance).

While an agency acts unreasonably when it fails to consider relevant information which is "too close at hand to ignore," the audit ratings here were not in that category.  The RFP specified that the agency could "utilize all information available at the time of the evaluation."  AR 458-59. Because the second audit covered a period of time from August 13, 2016, until April 2017, well after offerors were required to submit their final proposals on May 23, 2016, comparable information had not been submitted by other offerors during the course of this procurement.  To allow Walden alone to submit new past performance references, which were received well after the deadline in the RFP, would have exceeded GAO's corrective action and unfairly prejudiced other offerors that did not have the opportunity to submit more current references.

The corrective action ordered as a result of Walden's second GAO protest did not encompass re-opening the past performance evaluation for all offerors or mandate a wholesale reconsideration of the entirety of Walden's past performance up to the moment corrective action occurred.  Rather, the corrective action ordered by GAO was very limited and only required the agency to permit Walden to respond to two issues: Walden's difficulty maintaining contract performance while scaling up services from fiscal year 2015 to fiscal year 2016 and Walden's

failure to submit complete and accurate medical qualification packages.  AR 4887-88, 4904-05.  Accordingly, the USMS did not err when it declined to consider part two audit information that spanned a time period after the deadline for offerors' past performance submissions.

Walden also argues that the agency's reliance on the results of the first audit in evaluating Walden's past performance opened the door for the second audit to be considered because the first audit was also conducted after the May 23, 2016 deadline for proposals and was an interim report while the second audit was to be considered Walden's "official" audit results.  Pl.'s Mot. J. AR 13-14.  This argument is unavailing.  Plaintiff has not established that the agency relied on part one of the audit in its revised source selection recommendation.  See AR 7187 ("The original performance analysis, however, was fully formed without consideration of the PRT Report and this supplemental analysis stands fully with or without consideration of the PRT Report.")

Walden's next argument repeats a protest ground rejected by GAO - - that the USMS failed to properly evaluate Walden's response to refute adverse past performance issues.  Walden avers that, had the agency properly considered all the responsive information it submitted, it would have noted that most of the delays cited were accountable to outlier data points from applications previously ignored by a former contractor, as well as difficulties in recruiting CSOs in two of the new circuits which Walden took on for fiscal year 2016.  Pl.'s Mot. J. AR 17-18.  Contrary to Walden's argument, both the CO's source selection recommendation memorandum (AR 7173) and the SSA's independent analysis (AR 7193) demonstrate that the agency reviewed and considered all of the material submitted by Walden.  Walden points out that the USMS reported a total of 689 days late across 29 applicants, resulting in an average of 24 days late per applicant, but that 369 of those days are attributable to one application, while an additional 70 days are attributable to a second application.  Pl.'s Mot. J. AR 17.  In Walden's view, disregarding those two "outlier" applications results in only nine average days late for the remaining 27 applicants.  Id.  However, as GAO found, considering Walden's response, the USMS properly determined that Walden's average number of late days increased from fiscal year 2015 to fiscal year 2016.  AR 7429.  GAO also considered Walden's argument that the agency should have compared the median values of the two data sets and found that this analysis still reflected an increase in the number of late days for applicant packages.  Id.  Walden's disagreement with the agency's methodology in data interpretation does not alter the rationality of the agency's determination.

Second, Walden argues that the agency erred in evaluating Paragon's past performance by:

1)  not affording enough weight to Paragon's past Social Security contract, in which Paragon achieved a performance rating of "satisfactory"; and

2)  overlooking Paragon's relative lack of experience in the field of providing CSOs.

With respect to Paragon's performance on its Social Security contract, Walden alleges that the past performance rating of "Satisfactory" Paragon earned on this contract is evidence of significant performance problems on a current, relevant contract.  Walden argues that, had the USMS properly considered Paragon's performance, it would have shown that, even if Paragon were ultimately still deserving of an overall past performance rating of "Very Good," Paragon and Walden were not "essentially equal" within that tier.  Pl.'s Mot. J. AR 24.

Contrary to Walden's assertions, the record shows that the USMS was fully aware of Paragon's past performance on the Social Security contract and evaluated it in a reasonable manner.   The USMS noted that while Paragon had some issues, Paragon "proposed and implemented corrective actions [that] have improved performance and communication barriers" and that turnover of three different contract managers had exacerbated these issues but the current contract manager had corrected these issues swiftly.  AR 4215.

Ultimately, there is nothing in the record to suggest that the USMS did not accurately appraise Paragon's performance on its Social Security contract when factoring this performance into its overall past performance score and deciding that Paragon and Walden were essentially equal.   Paragon's performance issues on the Social Security contract occurred in 2012-2014, compared to Walden's issues, which occurred closer to the time of the evaluation in 2016.  As long as the agency articulates a rational basis for rating each contractor how it did, the Court will afford that performance evaluation deference.  Gulf Grp., 61 Fed. Cl. at 351.

Although Walden further faults the agency for failing to deem its past performance superior due to prior CSO work, the RFP did not require specific courthouse CSO experience.  Rather, the RFP notes that the USMS will evaluate "information on past or current contracts (Federal, State, and local government and commercial) for efforts similar to the Government requirement performed during the last three years (maximum)."  AR 459.  The agency reasonably considered work done by Paragon on contracts for DHS FPS and DHHS CIFSO as contracts which are similar in scope, magnitude of effort, and complexity to the contracts in the instant case.  AR 4211-14; see also AR 7431-32.

Ultimately, the record contains ample evidence that the agency carefully considered the nature and scope of each offeror's past performance, accounting for both the similarity of the task required as well as the monetary value of the contract, to assess whether there was a reasonable basis to conclude that the offeror could perform the requirement.  In the instant case, the record indicates that the USMS carefully considered all relevant past performance for both Walden and Paragon and reached the reasonable decision that both contractors' past performance was essentially equal and worthy of the same adjectival rating of "Very Good."

## The USMS Reasonably Evaluated Technical Proposals

Walden's final argument is that the USMS over-credited Paragon's technical proposal and failed to properly consider the significant strengths provided by Walden's technical proposal, ignoring key discriminators.  Walden's arguments amount to nothing more than **its** disagreement with the decision of the agency.  "This Court does not sit as a super source selection authority to second guess and re-score offerors' proposals. Rather, it is well established that the Court should not substitute its judgment to assess the relative merits of competing proposals in a government procurement."   AshBritt, Inc. v. United States, 87 Fed. Cl. 344, 367 (2009) (citing R & W Flammann GmbH v. United States, 339 F.3d 1320, 1322 (Fed. Cir. 2003)).  Offerors' technical proposals were to be rated on three criteria: Recruitment and Vetting Applicants, Training and Qualifications Program, and Quality Assurance/Quality Control Plan.  AR 472-74.  In each of these areas, Walden achieved a rating of "Good" and earned an overall Technical rating of "Good." AR 3136.  Paragon also received ratings of "Good" in the Training and Qualifications Program and Quality Assurance/Quality Control Plan factors, as well as in its overall Technical rating. However, in the area of Recruitment Program and Vetting Applicants, Paragon received a rating

of "Excellent." Id.  The fact that Paragon received a higher score than Walden in this area provided a rational discriminator for the USMS to determine that Paragon's proposal represented a better value than Walden's.

Paragon was the only offeror to warrant that it would [***], as opposed to Walden, which would [***].  AR 4308.  Paragon also proposed evaluating applicants [***].  AR 4309.  The USMS noted that this evaluation method was considered the "[***]."  Id.  Walden, on the other hand, proposed [***]."  Id.  Paragon proposed a system where it would [***].  AR 4308.  Walden proposed [***].  Id.  The USMS found Paragon's system to be superior because, *inter alia*, [***].  Id.  Overall, the USMS reasonably determined that although both proposals received an overall technical adjectival rating of "Good," Paragon's proposal was superior to Walden's and Akal's and warranted paying a slight premium for the additional benefits.  AR 4309.

### Walden is Not Entitled to Injunctive Relief

In order to obtain a permanent injunction, a protestor must show that: (1) it has actually succeeded on the merits; (2) it will suffer irreparable harm if such relief is not granted; (3) the balance of the hardships tips in the protestor's favor; and (4) an injunction will serve the public interest.  Centech Grp., Inc. v. United States, 554 F.3d 1029, 1037 (Fed. Cir. 2009).  Because Walden failed to succeed on the merits of its protest, the Court need not consider the other factors.  See Sci. Applications Int'l Corp. v. United States, 108 Fed. Cl. 235, 283 (Fed. Cl. 2012) ("In that [plaintiff] has not prevailed on the merits of its substantive claims, the first hurdle prerequisite to injunctive relief, inquiry is over.").  Accordingly, Walden is not entitled to permanent injunctive relief.

### Conclusion

Walden's requests for a permanent injunction, declaratory relief, and bid and proposal costs are **DENIED.**

The Clerk is directed to enter judgment on the Administrative Record in favor of Defendant.

s/Mary Ellen Coster Williams
 **MARY ELLEN COSTER WILLIAMS**
 **Judge**